[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
The plaintiff ("Levy") seeks the balance due for a real estate commission owed by the defendant ("Vuoso").
On February 8, 1995, Levy as broker and Vuoso as owner, entered into an Exclusive Right to Sell/Lease/Exchange of property owned by Vuoso. The form of the contract is the standard form recognized by the Greater New Haven Association of Realtors. The property is described as 281 Whalley Avenue, New Haven, Connecticut. The contract shows an effective date of February 8, 1995 through and including August 8, 1995. The contract CT Page 16078 (Exhibit 2) provides for a rental of $2400.00 per month with a security deposit of two months and the lease term as negotiable. Also contained in said contract were terms relative to a sale. Further provided was under paragraph E "compensation of a broker calling for a 6 % commission if co brokerage or 5 % commission if no co brokerage. In terms of the contract Levy being an MLS participant (Multi listing Service) submitted the listing contract to MLS.
Under the terms and conditions of the contract inter alia the owner agrees to place a sign on the property and owner agrees to refer to broker all inquiries or offers concerning the property.
Pursuant to the contract Levy listed the property with MLS (Exhibit 3 and Exhibit 4). On February 13, 1995, Levy through a sales representative William Silverman (Silverman) notified George Bradbury of Precision Tune of the location 281 Whalley Avenue. Silverman, agent for Levy began marketing the property by placing a sign on the property and placing the property on the MLS. Silverman further distributed flyers to other property owners in the area and spoke about the property at meetings of the Commercial Industrial Division of the New Haven Board of Realtors. Silverman during the listing agreement showed the property to prospective lessees.
The plaintiff in October of 1995 learned from Oxford Real Estate ("Oxford") that a lease of the property had been signed by Vuoso and James Testa ("Testa"). Testa had engaged Oxford to assist him in locating another property for rental for a Precision Tune franchise. Oxford had excluded the location of 281 Whalley Avenue because Bradbury had already informed him of the possible location at 281 Whalley Avenue. At no time before the expiration of the listing agreement was Silverman aware that Vuoso was in negotiations with Testa which resulted in the lease agreement (Exhibit 1). Testa testified that he became familiar with the 281 Whalley Avenue property from Bradbury.
Testa testified that no date was placed in August (Exhibit 1) only initials and the agreement was signed on September 14, 1995, when he started to do business at 281 Whalley Avenue. Testa testified that the signing of the agreement Exhibit 1 was not signed earlier because he was arranging for financing and that Vuoso did not induce or suggest the later signing than the period of the exclusive listing.
On June 15, 1995, Silverman met with Vuoso after learning that Vuoso was negotiating a lease with some one from Precision Tune. Vuoso admitted he was negotiating the lease and requested that Silverman stay out of it and he would take care of him under the table. (Transcript 10/5/2000 pp 64-73. On October 16, 1995, Silverman learned a lease had been signed CT Page 16079 and it was faxed to him by Oxford. Silverman then invoiced Vuoso a bill for $8556.00 the 6% commission on the lease. (Exhibit 11). Levy thereafter filed suit on February 20, 1996 CV 96-0383797-S, which suit was withdrawn after receiving two payments of $1,750.00 each leaving a balance of $5056.00, which amount is presently sought in this action, plus interest and attorneys fees as provided in the listing agreement pursuant to paragraph J 2.
Vuoso essentially denies the alleged breach of contract and filed three special defenses alleging (a) that the plaintiff failed to make diligent efforts to sell/lease the property; (b) that the signatures on the listing agreement was induced by fraud and misleading representations; and (C) the plaintiff made a prior material breach of the contract and constructively repudiated the same making it void and unenforceable.
The defendant further made a counterclaim which the court will later discuss in this decision essentially asserting that the plaintiff made no efforts to market the property in the First Count; the Second Count sounds in misrepresentation; the Third Count misrepresentation and fraudulent inducements and that the exclusive listing was unfair and deceptive in violation of Connecticut Unfair Trade Practices Act.
The agreement entered into Exhibit 1 was signed a month after the exclusive agreement expired.
Vuoso relies heavily on the decision in Epina Realty Inc. v. SpaceRealty Inc. 194 Conn. 71 (1984).
In Epina, the court in footnote 4 page 76, pointed out that there are three basic types of listing agreements:
 "In Real Estate Listing Service, Inc. v. Real Estate Commission, 179 Conn. 128, 132, 425 A.2d 581 (1979), we referred to the three basic types of listing agreements and described them as follows: "[T]he open listing, under which the property owner agrees to pay the listing broker a commission if that broker effects the sale of the property but retains the right to sell the property himself as well as the right to procure the services of any other broker in the sale of the property; the exclusive agency listing, which is for a time certain and authorizes only one broker to sell the property but permits the property owner to sell the property himself without incurring a commission; . . . and the exclusive right to sell listing, under which the sale of the property during the contract CT Page 16080 period, no matter by whom negotiated, obligates the property owner to pay a commission to the list broker." (Citations omitted.)"
In Epina the owner reserved the right to sell/lease the property. In this case there was no such reservation and to the contrary the listing agreement was an exclusive right to sell/lease/or exchange and specifically provided under H 4:
 Owner agrees to refer to Broker all inquiries or offers concerning the property. Owner agrees to hold Broker harmless from any liability arising from any incorrect information supplied by Owner or from any material fact concerning the property which the Owner fails to disclose. Owner agrees to reimburse Broker for any liability, loss, and/or expense incurred by the Broker as a result of Owner's misrepresentation or failure to detect and/or disclose any environment problems(s) pertaining to the property, including but not limited to reasonable attorney fees, sheriff fees, court costs, and commissions, with the maximum legal interest rate thereon.
Vuoso testified he purchased the property at a foreclosure sale and met with people he thought were going to go into 281 Whalley Avenue two days later who held a Precision Tune location on Dixwell avenue in Hamden. He also met Bradbury, Regional Director of Precision Tune sometime in January and that he had given notice to Bradbury and the prior occupants to get their material out of the premises. Vuoso at the end of December 1994 and early in January, 1995 tried to lease the property. Vuoso knew Silverman who brokered another piece of property Vuoso had purchased on Whalley Avenue. Silverman approached him about brokering this property and he gave Silverman the listing. Silverman advised him how much the property was worth and what he should get in rent and that is how the numbers were arrived at for the multiple listing.
Although the lease was signed after the time period in the Exclusive Listing (Exhibit 2) the terms and conditions were resolved and agreed to within the period for the exclusive listing.
The plaintiff billed the defendant and brought suit to recover the commission. Vuoso made two payments and the plaintiffs withdrew the action and once again brings this action to recover the balance of $5,056.00 plus interest and attorney fees. The plaintiff further argues that the defendant should be equitably estopped from denying his obligations under the contract. CT Page 16081
The court agrees with the argument that the defendant's reliance on theEpina case is misplaced.
In the absence of a provision in a contract precluding negotiations by the owner during the term of the exclusive listing, or some showing of bad faith or fraud, the plaintiff, who had no contact whatsoever with the eventual lessees, is not entitled to a commission upon the consummation of the lease after the expiration of the agreement. (See Epina supra at page 88).
In this case the owner did not reserve the right to negotiate the lease. There was no showing of fraud or misrepresentations on the part of Silverman. The defendant is estopped from denying his obligations.
The court finds that the plaintiff is due the balance of the commission in the amount of $5056.
The defendant failed to prove any of the special defenses. The court further finds for the plaintiff as to all claims in the counterclaim. The court does not award any interest in this matter. The application of Section 37-3a of the General Statutes is discretionary.
The court has examined the affidavit of the plaintiff for attorney fees pursuant to the contract and awards the sum of $6,000.00
Judgment is entered in favor of the plaintiff to recover $11,056.00 plus court costs.
Frank S. Meadow, J.T.R. CT Page 16082